Barbara **HANDSCHU**, et al., Plaintiffs,

v.

**SPECIAL SERVICES DIVISION,
et al., Defendants.**

**No. 71 Civ. 2203(CSH).**

United States District Court,
S.D. New York.

July 28, 2010.

Paul G. Chevigny, Jethro M. Eisenstein, Profeta & Eisenstein, Martin R. Stolar, Franklin Siegel, New York, NY, Attorneys for Plaintiff Class; Arthur Eisenberg, New York Civil Liberties Union, New York, NY, appearing with Attorneys for Plaintiff Class.

Peter Gerard Farrell, Gail Donoghue, New York City Office of Corporation Counsel, New York, NY, for Defendants.

## MEMORANDUM OPINION AND ORDER

HAIGHT, Senior District Judge:

Class Counsel move for attorneys' fees in this civil rights action. The claim is premised upon this Court's opinion and order dated January 19, 2010, 679 F.Supp.2d 488 (S.D.N.Y.2010) ("the January 19 Opinion"), which identified the plaintiff class as the prevailing party on a sufficiently significant contested issue to justify an award of attorneys' fees under 42 U.S.C. § 1988(b), payable by defendant City of New York. Familiarity with that opinion and all prior opinions in the case is assumed. Their content is recited only to the extent necessary to explain this resolution of the motion.

## I. BACKGROUND

The January 19 Opinion noted that during the motion practice relevant to this motion for attorneys' fees, "the plaintiff class achieved victory on a significant claim: that the [Handschu] Guidelines sub-

jected the NYPD to Class Counsel's inquiries into police surveillance policies and potential injunctive relief for the class and against the NYPD." 679 F.Supp.2d at 497.[1] In consequence, "the plaintiff class qualifies as a 'prevailing party' under § 1988 and is entitled to an award of attorneys' fees." *Id.* at 499. However, "the Court rejected the plaintiff class's claim that [NYPD] Interim Order 47 was facially invalid under the Constitution and the Handschu Guidelines," which required that Class Counsel's hours spent on the unsuccessful claim "be excluded in considering the amount of a reasonable fee." *Id.* (citing and quoting *Hensley v. Eckerhart,* 461 U.S. 424, 440, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983)).

There is one aspect of the case where the Court held that no exclusion of time need be made for lack of success. The January 19 Opinion sanctioned Corporation Counsel for waiting until September 18, 2008, to advise Class Counsel and the Court that Interim Order 47, the subject matter of the motion practice, had been rescinded on April 13, 2007. 679 F.Supp.2d at 500–04. The sanction imposed by the Court required Corporation Counsel (and presumably the defendant City) to "pay Class Counsel's fees and expenses" incurred during that period of time

to the extent that such fees and expenses would not have been incurred if Corporation Counsel had told Class Counsel of the Order's rescission when it occurred. To recover on this ground, Class Counsel must demonstrate that the allocation is sound. To the extent they do so, the resulting award of fees and expenses will not be subject to re-

---

1. The class achieved that victory in an opinion of this Court known in the bibliography of the case as *Handschu VIII,* 2007 WL 1711775

(S.D.N.Y. June 13, 2007) ("the June 13, 2007 Opinion and Order").

duction on a *Hensley* rationale of partial success.

*Id.* at 504 (footnote omitted).

On those aspects of the case subject to *Hensley* reduction, the January 19 Opinion directed Class Counsel "to pare down their requested fees and costs so as to eliminate the time and expense allocable to the issue of Interim Order 47's facial invalidity." 679 F.Supp.2d at 500. In making that direction, I chose the first of the two alternative procedures described by *Hensley:* "The district court may attempt to identify specific hours that should be eliminated, or it may simply reduce the award to account for the limited success." 461 U.S. at 436–37, 103 S.Ct. 1933. The January 19 Opinion placed the burden of identifying specific hours to be eliminated upon Class Counsel, "who are seeking an award and have superior knowledge of how their time was spent." 679 F.Supp.2d at 500.

The January 19 Opinion stated that this Court would enforce the Second Circuit's requirements for court-ordered compensation for attorneys, set forth in Judge Newman's opinion in *New York State Ass'n for Retarded Children, Inc. v. Carey,* 711 F.2d 1136, 1148 (2d Cir.1983):

> Hereafter, any attorney—whether a private practitioner or an employee of a non-profit law office—who applies for court-ordered compensation in this Circuit for work done after the date of this opinion must document the application with contemporaneous time records. These records should specify, for each attorney, the date, the hours expended, and the nature of the work done.

(quoted at 679 F.Supp.2d at 505). The January 19 Opinion added a footnote:

> Cases following *Carey* have recognized the changing technology and allow the amount and purpose of attorneys' time to be proved by artifacts such as computer-generated printouts or summaries. However, such proof must be accompanied by affidavits or other evidentiary material showing that the printouts are based upon or derived from *contemporaneous* records which are accurately reflected in the printouts or summaries.

*Id.* at 505 n. 10.

Class Counsel responded to the January 19 Opinion in a letter to the Court professing their inability to implement fully the *Hensley* procedure the Court chose. Class Counsel wrote:

> Our review of the time spent on this case shows that the issues on which the plaintiff class prevailed—"the empowerment of class counsel in respect of NYPD surveillance policies" (Mem. Op. and Order at p. 18[, 679 F.Supp.2d at 500] ) were disputed by the NYPD from the very beginning of the motion practice in November 2005. While it is sometimes possible simply to identify specific hours that should be eliminated, there are submissions in which the issues on which the class prevailed are intertwined with the issues on which the class failed. Where that is the case, it is next to impossible to parse out the hours that went towards prevailing and separate them from the hours that ended in failure.

Letter quoted in Plaintiff's Main Brief at 3. In an unreported Memorandum Order, the Court left Class Counsel to their own devices, subject to review and evaluation:

> As for the form of the fee application, with particular reference to a *Hensley* reduction, Class Counsel may proceed as they think best in the first instance, subject to the views of Corporation Counsel, possible discovery and the ultimate evaluation of the Court.

Order quoted in Plaintiff's Main Brief at 2.

Thereafter Class Counsel filed the application for attorneys' fees and expenses which this Opinion and Order adjudicates.

## II. THE FEE APPLICATION

Almost since the inception of this protracted case, five attorneys have represented the plaintiff class: Jethro M. Eisenstein, Paul G. Chevigny, Martin R. Stolar, Franklin Siegel, and Arthur Eisenberg (collectively throughout, "Class Counsel"). They are not partners in the same law firm or otherwise professionally affiliated. Each is an experienced lawyer, admitted to the bar during the 1960s or 1970s, active in one way or another during their careers in civil rights litigation. Eisenstein and Stolar are currently in private practice. Chevigny was first employed by the New York Civil Liberties Union, then joined the New York University Law School faculty, and has retired as a professor emeritus. Siegel is employed at the City University of New York Law School. Eisenberg is the Legal Director of the New York Civil Liberties Union. For the purposes of this fee application, jointly submitted by Class Counsel, each attorney values his time at the rate of $400 per hour.

The principal document in support of the fee application is a 20–page "compilation of the time records of plaintiff class counsel since we began work on the motion to enjoin enforcement of Interim Order 47, which was filed in November 2005." Eisenstein Decl. ¶ 2. The compilation, Ex. 1 to Eisenstein's sworn declaration, has columns giving dates, the description of work performed on those dates, and hours ascribed to each of the five attorneys participating on a particular day, captioned by their initials: JME, PGC, MRS, FS, and AE. The first entry is dated February 27, 2005 and the last is February 17, 2010.

The application breaks this overall period into five subdivisions, described in plaintiff's Main Brief ("MB"), as follows:

1. *February 2005–June 2006.* During this period, Class Counsel prepared and filed a motion to enjoin enforcement of Interim Order 47, on the grounds that it was facially invalid under the Constitution and the modified Handschu Guidelines. The City's opposition contended, *inter alia*, that Class Counsel had no authority to challenge NYPD surveillance policy in the absence of a constitutional violation. Class Counsel's brief says with respect to this period:

> The hours devoted during this period to the direct constitutional challenge to Interim Order 47, which failed, have been eliminated from our fee request. A substantial amount of our time during this period was devoted to rebutting the NYPD contention that class counsel had no authority whatever to challenge a failure to comply with the Guidelines. . . . We have reviewed the time records and, in the exercise of billing judgment, we have eliminated those that were clearly unrelated to the issues on which the class prevailed. . . . For the most part, however, our review of the submissions during this period shows that no clear temporal allocation can be made because the issues were so interrelated. We believe that given the significance to the plaintiff class of the issue upon which we prevailed, a reasonable assessment of counsel's time with respect to the two interrelated issues would allocate 60% of our time to the issue upon which plaintiffs prevailed and 40% of our time to the issue upon which we did not prevail. We therefore contend that all such hours should be counted, with a downward adjustment of 40%.

MB at 5–6.[2]

2. *June 20, 2006–February 15, 2007.* Class Counsel make no claim for time ex-

---

2. The compilation, Ex. 1 to the Eisenstein declaration, indicates the elimination of hours by including the date and description of the work and then typing a line through the description, thereby striking the hours from the compilation totals.

pended during this period "because it related entirely to the substantive claim that Interim Order 47, on its face, was inconsistent with the modified Guidelines, and this claim failed." MB at 7. All entries on the compilation for this period are stricken. The analysis in this Opinion relates to the greater balance of the time, claimed to be compensable in part or entirely.

3. *February 15, 2007–June 13, 2007.* During this period, Class Counsel claim, "our efforts were directed primarily toward the empowerment issue, on which the class ultimately prevailed." MB at 7–8. The compilation eliminates "all time records during this period that related only to the challenge to Interim Order 47. As to the remaining records, no successful temporal division of the time can be made." *Id.* at 8. Class Counsel contend that "all the remaining time records during this period should be counted, with a downward adjustment of 20%," a lesser downward adjustment that is appropriate "because the focus of the submissions was predominantly on the issues in which the class prevailed." *Id.*

4. *June 13, 2007–September 18, 2008.* Class Counsel contend that "all time charges during this period are compensable without discount, because we were either addressing the issues on which we prevailed or engaging in activities that were caused by the NYPD failure to tell anyone that Interim Order 47 had been revoked." MB at 8. Those activities included "address[ing] Class Counsel's power to challenge surveillance procedures that violated the guidelines," the right "to conduct discovery in aid of such a challenge," moving to dismiss the City's interlocutory appeal from the June 13, 2007 Opinion and Order, and "reviewing documents and videos in preparation for the as-applied challenge to Interim Order 47." *Id.*

5. *September 18, 2008–January 19, 2010.* Class Counsel contend that all the time during this period is compensable. Their activities were "addressed to establishing that the class was a prevailing party, identifying the issues on which the class prevailed and established the right of the class to notification in the event of a future change in surveillance policy," and "the preparation of this [fee] application." MB at 9.

I will refer to these five subdivisions of effort as Periods 1 through 5.

The five attorneys undertake in sworn declarations to demonstrate that the compilation was based on time records which were "contemporaneous," as *Carey* and its progeny require. Eisenstein says: "My hours as set forth in this compilation were derived from my contemporaneous time records, and I confirm that the account of my time set forth in the attached compilation accurately reflects the time I recorded in my annual diaries, in which I have maintained time records for all matters on which I have worked since 1987." Decl. ¶ 3. Chevigny says:

My hours set forth in the compilation were derived from my desk calendars for the years 2005–10, where I usually note hours worked on this case, and in some cases in my appointment books. I note hours in my appointment books when I am away from my desk calendar for an extended period of time. I affirm that these hours were recorded contemporaneously, and to my recollection they are substantially correct.

Decl. ¶ 2. Stolar says that the compilation of time expended by him "is accurate and is based on contemporaneous time slip records kept by me as well as entries contained in my daily calendar/diary records for the period in question, and in a few instances from contemporaneous records kept by my co-counsel." Decl. ¶ 4. Siegel

says that the compilation of time expended by him "is accurate and my hours set forth there are derived from contemporaneous written records I made throughout the period in a desk calendar with a red hardcover commercially known as a 'Standard Diary' (the style was formerly known as a 'Keith–Clark Standard Diary' "). Decl. ¶ 4. Eisenberg says that the time attributed to him in the compilation "was drawn by me from my contemporaneous time records that I maintain in my desk diary and in a few instances, from contemporaneous records of my co-counsel in this matter." Decl. ¶ 4.

Returning to the five periods of time Class Counsel identify in their main brief, they claim full compensation at $400 per hour with respect to Periods 4 and 5, no compensation for Period 2, 60% compensation for Period 1, and 80% compensation for Period 3, with the following results:.

|  | Total | Claimed |
| --- | --- | --- |
| Eisenstein | $126,468.00 | $111,728.00 |
| Chevigny | $ 45,200.00 | $ 39,600.00 |
| Stolar | $ 28,872.00 | $ 25,549.60 |
| Siegel | $ 35,833.00 | $ 29,986.40 |
| Eisenberg | $ 37,500.00 | $ 30,040.00 [3] |
|  | $273,873.00 | $236,904.00 |

Eisenstein also claims "expenses in connection with the case" in a total amount of $428.51. Decl. ¶ 7.

## III. STANDARD FOR FEE AWARDS

There was a time in Second Circuit jurisprudence when a district court's calculation of recoverable attorneys' fees began with "a two-step technique whereby it first calculated a 'lodestar' amount determined by multiplying the reasonable hours worked on the case by a reasonable hourly rate of compensation, and then reduced this lodestar based on case-specific considerations." *Barfield v. N.Y.C. Health &*

*Hosps. Corp.,* 537 F.3d 132, 151 (2d Cir. 2008) (reviewing past practices) (citations and particular figures omitted).

However, in *Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany,* 522 F.3d 182 (2d Cir.2008), the Second Circuit "traced the evolution of this two-step process and the confusion sometimes attending its application before concluding that the 'lodestar' metaphor should be abandoned." *Barfield,* 537 F.3d at 151. The *Barfield* court continued: "Henceforth, we have advised district courts, in exercising their 'considerable discretion to bear in mind *all* of the case-specific variables that we and other courts have identified as relevant to the reasonableness of attorney's fees in setting a reasonable hourly rate' to be used in calculating a 'presumptively reasonable fee.' " *Id.* at 151–52 (citing and quoting *Arbor Hill* ). In *Adorno v. Port Authority of New York and New Jersey,* 685 F.Supp.2d 507, 511 (S.D.N.Y.2010), after considering the teachings of *Arbor Hill* and *Barfield,* Judge Cote said usefully:

> Hence, the process is really a four-step one, as the court must: (1) determine the reasonable hourly rate; (2) determine the number of hours reasonably expended; (3) multiply the two to calculate the presumptively reasonable fee; and (4) make any appropriate adjustments to arrive at the final fee award.

Depending on case-specific circumstances, the presumptively reasonable fee may be reduced or increased. *See, e.g., Robinson v. City of N.Y.,* No. 05 Civ. 9545(GEL), 2009 WL 3109846, at *3 (S.D.N.Y. Sept. 29, 2009) ("Following the determination of the presumptively reasonable fee, the court must then consider whether an upward or downward adjustment of the fee is war-

---

**3.** The fee amount claimed by Eisenberg included in this table is less than the amount he claimed in his declaration, because Eisenberg failed to apply the 20% reduction to the work performed during Period 3.

ranted based on factors such as the extent of plaintiffs' success in the litigation.").

In *Barfield* the Second Circuit noted "the Supreme Court's observation that 'the most critical factor' in a district court's determination of what constitutes reasonable attorney's fees in a given case 'is the degree of success obtained' by the plaintiff." 537 F.3d at 152 (citing and quoting *Farrar v. Hobby*, 506 U.S. 103, 114, 113 S.Ct. 566, 121 L.Ed.2d 494 (1992)). Other factors that may reduce the amount of a presumptively reasonable fee are "excessive and redundant fees and vague entries." *Saunders v. City of N.Y.*, No. 07 Civ. 830(SAS), 2009 WL 4729948, at *8 (S.D.N.Y. Dec. 9, 2009).

## IV. THE CITY'S OBJECTIONS TO THE FEE APPLICATION

The City's brief argues for a number of reductions from whatever presumptively reasonable fees may be calculated. I will consider them in order, but begin with the first step in fee application analysis: the hourly rates claimed by Class Counsel.

### A. Hourly Rates

■ Each of the five attorneys representing the plaintiff class seeks to be compensated at an hourly rate of $400. Corporation Counsel do not state explicitly that this rate is excessive for any of the Class Counsel. The only reference in the City's brief to these hourly rates appears at the very end, where after arguing for a number of unrelated reductions, Corporation Counsel say that "after all the reductions set forth above are made for their unsuccessful claims and inadequate billing entries, there should be an additional reduction of the fees by 50% to account for staffing this action with five senior attorneys," and add: "In that event, we do not believe that any reduction in the hourly rate is necessary." Brief at 23.

I reject that seeming compromise offer because the Court does not bargain with parties. Overstaffing is a legitimate question for the City to raise, and is considered in Part IV.E., *infra*. But if Corporation Counsel believed that any of the five Class Counsel was not entitled to be compensated at an hourly rate of $400, they should have said so and why.

Perhaps that argument was not made because it had no hope of success. Given the experience and particular expertise of all five Class Counsel, an hourly rate of $400 is reasonable for each of them. They support that rate by factual allegations in their sworn declarations. *See, e.g.*, Eisenstein Decl. at ¶ 4: "In discussions with other lawyers, I have determined that this [$400] hourly rate is in the low to mid-range of fees charged for civil cases by lawyers with my experience in New York City." This is the actual rate Eisenstein and Stolar currently charge their private clients. In *Simmonds v. New York City Department of Corrections*, No. 06 Civ. 5298(NRB), 2008 WL 4303474, at *5 (S.D.N.Y. Sept. 16, 2008), a Title VII civil rights case, Judge Buchwald relied upon her "independent knowledge of the rates charged by attorneys for similar services and of recent awards in the district for complex civil rights matters" in compensating the two lead counsel at an hourly rate of $425 (collecting cases). The City offers no factual or legal arguments in opposition. I find that an hourly rate of $400 is reasonable compensation for each of the five Class Counsel.

### B. Time Spent

■ At hourly rates of $400, the five attorneys' total fees reflect these total numbers of hours spent during the five periods of time described in the application: Eisenstein, 316 hours; Chevigny, 113 hours; Stolar, 72 hours; Siegel, 90 hours;

Eisenberg, 94 hours. Among Class Counsel, Eisenstein is *primus inter pares,* or "lead counsel," in the common parlance of class actions. Eisenstein signs the briefs, writes the letters to the Court and Corporation Counsel, and makes most of the oral arguments while the others sit mostly silent at the counsel table, sometimes contributing contentions during the reply round.

Given the complexity and importance of the issues litigated during the periods for which attorneys' fees are sought, I find that these hours are *prima facie* reasonable in amount. I qualify that finding because I must also deal with the City's contention that overstaffing or duplication of attorneys' efforts requires a reduction in the fees claimed, a question addressed in Part IV.E., *infra.* But we do not see in this case some of the issues that may arise when a fee application is made by a large law firm: charging partners' hourly rates for work that could be done by associates or paralegals, or loading up on hours claimed for associates and paralegals. The five Class Counsel are solo practitioners, academics, or employed by civil liberties unions. The hours they charge are their own, and subject to the noted overstaffing *caveat,* were reasonably expended upon the case at hand.

## C. The Degree of Success Achieved by the Plaintiff Class

The Supreme Court has made it clear that the degree of success obtained by a plaintiff in litigation is the most critical factor in determining a reasonable attorney's fee. The present fee application implicates that principle because, with respect to certain aspects of the case, the plaintiff class and the City both scored successes and suffered failures during the pertinent rounds of litigation. Accordingly a reduction in the claimed fees for lack of success in those areas is required. The analysis in this Part does not apply to the

fees covered by the sanction imposed by the Court upon Corporation Counsel, which are not subject to reduction. Those fees are discussed separately in Part II, *supra.*

The January 19 Opinion contains a detailed summary of the parties' successes and failures. 679 F.Supp.2d at 494–95. Principally, the Court rejected the class's claim that Interim Order 47 was facially invalid under the Constitution or the modified Handschu Guidelines, but accepted the class's claim that, contrary to the City's contention, "the Guidelines and the NYPD's compliance with them fell within the Court's equitable power, and that if Class Counsel were able to demonstrate the NYPD had adopted a policy that disregarded the Guidelines, the Court may exercise that equitable power and grant equitable relief." *Id.* at 494. Several peripheral disputes were resolved in manners consistent with those two core rulings.

In the motion at bar, the briefs of counsel follow the traditional choreographed steps in fee application litigation. Class Counsel, seeking fees, tend to maximize their successes and minimize their failures. Corporation Counsel, opposing the fees, tend to maximize the failures and minimize the successes. All this is predictable, but Corporation Counsel make one argument that stretches too far. The City's brief says at 1:

> [T]he tangential issue on which Class Counsel were deemed to "prevail" only arose because their claim in this case— that videotaping of demonstrations by itself violates the Constitution—was wrong as a matter of black letter law. In other words, had Class Counsel not brought this baseless action, the issue of "standing" would not have arisen.

Putting aside the denigration of a core litigated issue as "tangential" and the su-

percilious placing of the verb "prevail" in quotation marks (the January 19 Opinion *held* that the class *did* prevail on that issue), this argument disregards history with respect to the genesis of the dispute about Class Counsel's ability to challenge NYPD policies. It is common ground that Corporation Counsel first raised the issue. *See* Pl. Class's Reply Brief at 3 ("class counsel's 'standing,' as defendants characterize it, was raised by the defendants and not by class counsel"), and the City's Brief at 10 ("the sole issue on which they 'prevailed' (standing) which was raised by defendants in opposing this lawsuit."). To paraphrase the City's just-quoted argument: 'Had Corporation Counsel not contended that Class Counsel could not assert any claim based on Guidelines, the issue of standing would not have arisen.' That contention was not necessary to the City's defenses on the merits, namely, that Class Counsel's constitutional claim "was wrong as a matter of black letter law," and Interim Order 47 as applied did not violate the Guidelines. It is one thing to say that a claim is wrong. It is quite another to say that a claim cannot be made at all. It is readily apparent that the City expanded the litigation by introducing the standing issue in hopes of making Class Counsel go away, taking the plaintiff class and the Handschu Guidelines with them. That would have been the practical result if the City had succeeded. But the City failed. The class prevailed, on an issue of central importance to the future conduct of the case.

It follows that the City's suggested "90% reduction" from the claimed fees, Brief at 4, misses the mark by a wide margin. That reduction is comprised of two elements: "[T]ime spent on the unsuccessful claims must be deducted where identifiable and the remaining time which Class Counsel admittedly cannot identify as pertaining to the unsuccessful or successful claims should be subject to a substantial reduction based upon Class Counsel's lack of adequate record keeping." *Id.*

Class Counsel's time records fail to satisfy the *Carey* requirements completely. That subject is discussed in Part IV.D. As for a reduction for partial failure, *Barfield* contains the Second Circuit's most recent treatment of the question. The plaintiff in *Barfield*, employed at a City hospital, sued the City for overtime pay pursuant to the federal Fair Labor Standards Act on behalf of herself and a purported class of similarly situated health care employees. The district court granted summary judgment in favor of plaintiff and awarded her unpaid overtime, liquidated damages, and attorneys' fees and costs, but declined to certify a class. Plaintiff's counsel calculated his fee using the lodestar formula. The district court reduced the fee "by 50 percent to account for plaintiff's failure to secure collective action certification." 537 F.3d at 135. Plaintiff appealed from that reduction. The Second Circuit affirmed. The court of appeals agreed with the district court "that plaintiff's primary aim in this litigation, as reflected in both the complaint and in the first four months of litigation ... was collective action certification," *id.* at 140, and concluded:

> Even doubled for liquidated damages, this recovery [by plaintiff individually] does not reflect such a degree of success as to compel an award for the full attorney's fees incurred after denial of class certification. In this respect the district court got it exactly right: the reasonableness of the attorney's fees incurred linked directly to the ability to maintain the case as an FLSA collective action. Accordingly, we identify no abuse of discretion in its decision to reduce the fee for the success in pursuing Barfield's claim by itself to $49,889.

*Id.* at 152–53 (citation, footnote, and internal quotation marks omitted).

■ A 50% fee reduction when a party fails to achieve its "primary aim" in the litigation counsels against a reduction of greater than 50% when a party prevails on the most important issue in the litigation. That is what occurred in the case at bar. Class Counsel began the litigation with an attack on the validity of Interim Order 47: a discrete claim addressing a single surveillance protocol. When Corporation Counsel inserted a standing issue into the litigation in an effort to disarm Class Counsel in future Guidelines disputes, that became the issue of primary importance as the litigation unfolded in its expanded form. It is of no moment to this degree-of-success analysis that a significant issue was introduced by a defendant rather than a plaintiff. The district court's "central responsibility [is] to make the assessment of what is a reasonable fee under the circumstances of the case." *Barfield*, 537 F.3d. at 152 (citation and internal quotation marks omitted). The meaningful circumstance is not who raised an issue of central importance, but who prevailed on it.

I conclude that in those aspects of the case where a reduction for lack of success is required, that reduction should be 30%.[4]

It bears repeating that this Court is required to make this percentage reduction—the second of the two methods the Supreme Court described in *Hensley*—because Class Counsel professed themselves unable in significant measure to do what the Court directed: "pare down their requested fees and costs so as to eliminate the time and expense allocable to the issue of Interim Order 47's facial invalidity." 679 F.Supp.2d at 500. Some hours were excluded as relating solely to the class's unsuccessful challenge to Interim Order

47, but Class Counsel profess their inability to make that allocation with respect to most of their time because the issues "are intertwined." I think it is at least as likely that the task of allocation was complicated by the inadequacy of counsels' time records. I turn to that question.

## D. The Time Records

■ I begin by recalling Judge Newman's instruction in *Carey* that attorneys applying to a court for fees "must document the application with contemporaneous time records. These records should specify, for each attorney, the date, the hours expended, and the nature of the work done." 711 F.2d at 1148. There are two elements to this mandated record keeping: time and content. As to time: The records must be made contemporaneously, which is to say, while the work is being done or, more likely, immediately thereafter. Descriptions of work recollected in tranquility days or weeks later will not do. As to content: The records must be specific and detailed. Even if made contemporaneously, an entry "Engaged on Jones case—8 hours" will not do.

■ "In the absence of relevant details, it is nearly impossible for the court to assess the reasonableness of the time spent on each activity." *Simmonds*, 2008 WL 4303474, at *8. "Fee applicants should not 'lump' several services or tasks into one time sheet entry because it is then difficult if not impossible for a court to determine the reasonableness of the time spent on each of the individual services or tasks provided.... It is not the court's job to decipher time entries and guess how much time each activity took." *Williams v. N.Y.C. Hous. Auth.*, 975 F.Supp. 317,

---

4. In their Main Brief, Class Counsel suggest a 40% reduction for Period 1 and a 20% reduction for Period 3. The bases for these particular allocations are not explained. It is prefer-

able, and more in accordance with case law, for the Court to assess the overall degree of success in the litigation and make an appropriate overall reduction for failure.

327 (S.D.N.Y.1997) (ellipsis in *Williams;* citation omitted). "A time entry is vague if it lacks sufficient specificity for the Court to assess the reasonableness of the amount charged in relation to the work performed." *Hnot v. Willis Group Holdings Ltd.,* No. 01 Civ. 6558(GEL), 2008 WL 1166309, at *5 (S.D.N.Y. April 7, 2008) (internal quotation marks and citation omitted). Accordingly, "where adequate contemporaneous records have not been kept, the court should not award the full amount requested." *F.H. Krear & Co. v. Nineteen Named Trustees,* 810 F.2d 1250, 1265 (2d Cir.1987).

In *Scott v. City of New York,* No. 02 Civ. 9530(SAS), 2009 WL 2610747 (S.D.N.Y. Aug. 25, 2009), a prominent attorney who participated in a successful FLSA case "did not submit contemporaneous time records in support of plaintiffs' fee application for his share of the fees." *Id.* at *6. Instead, he "had his office staff re-create his time records based on e-mails and other sources," further described in the attorney's affidavit as "an extensive database of incoming emails maintained by my law firm in a computer folder, the records of [other law firms], my office files, court records and court calendars." *Id.* at *6 & n. 41. Judge Scheindlin, unimpressed by this non-contemporaneous compilation, said: "This, alone, is fatal to an attorney's fees request," but was willing to give the attorney "the benefit of the doubt and presume that the records submitted constitute some semblance of his actual time charges." *Id.* The court reduced the attorney's fees by 20% to adjust for "suspicious multiple entries" (that is, identical repeated entries) and "to sanction [him] ... for not submitting contemporaneous time records." *Id.*

The applications of the five Class Counsel in the case at bar suffer from some of the same infirmities. The compilation of times, Ex. 1 to the Eisenstein declaration, is not a contemporaneous record; counsel do not pretend that it is. Counsel say in their declarations that they put together their compilation of hours individually spent by referring to such sources as "annual diaries," "desk calendars," "appointment books," and "contemporaneous time records" or "time slip records." Each source document is said to be "contemporaneous"; the declarations repeat the adjective like a mantra. I accept that they were made at the times described. That satisfies the element of time. But counsel's declarations do not satisfy the element of content. The source documents are described only in generic terms. Counsel's declarations do not say if the source documents, which are not produced,[5] gave specifics with respect to "the date, the hours expended, and the nature of the work done," as *Carey* requires. Accordingly, the Court cannot place complete confidence in the proof. For example, an entry in a year-old appointment book reciting only that a conference with other Class Counsel was scheduled to or did take place during the morning or afternoon of a particular day would not suffice.

I recognize that the January 19 Opinion approved in principle proof of "the amount and purpose of attorneys' time" by "artifacts such as computer-generated printouts or summaries," but in practice, to satisfy *Carey* the proof must demonstrate that original contemporaneous entries of sufficient specificity were punched into or logged in a database from which the printouts or summaries are derived. The Second Circuit considered that question in

---

**5.** While the City could have sought the original source documents in discovery and did not do so, that does not shift the burden of proof and persuasion from Class Counsel, who are applying for the fees.

*Cruz v. Local Union Number 3 of the International Brotherhood of Electrical Workers,* 34 F.3d 1148, 1160 (2d Cir.1994):

> Local Union No. 3 claims that attorneys fees should not have been awarded herein because, *inter alia,* Davis & Eisenberg did not submit actual contemporaneous time records, but instead submitted a typed listing of their hours from their computer records. This argument is unpersuasive. A review of the submissions made by Davis & Eisenberg shows that they made contemporaneous entries *as the work was completed,* and that their billing was based on *these contemporaneous records.* We believe this falls sufficiently within the meaning of "contemporaneous," and that such a practice is not contrary to the dictates of *Carey.*

(emphases added). The submissions of Class Counsel fall well short of demonstrating such a practice.

I conclude that there must be a 10% reduction in Class Counsel's fees for failure to support them with time records fully compliant with the rule of *Carey.*[6]

**E. Overstaffing and Duplicative Work**

■ The City says that the claimed fees must be reduced "in all periods based on having five veteran attorneys all billing at $400 an hour," since the City should not "get stuck paying for five attorneys—effectively, five partners billing at a top rate—to work on the same matter." Brief at 22.

"The use of multiple attorneys [ ] is not unreasonable *per se." Williamsburg Fair Hous. Comm. v. Ross–Rodney Hous. Corp.,* 599 F.Supp. 509, 518 (S.D.N.Y. 1984). "Of course, a trial judge may decline to compensate hours spent by collaborating lawyers or may limit the hours allowed for specific tasks, but for the most part such decisions are best made by the district court on the basis of its own assessment of what is appropriate for the scope and complexity of the particular litigation." *Carey,* 711 F.2d at 1146. Separate fees charged by lawyers collaborating on the same matter "would be palatable only if counsel were committed to ensuring that the total number of hours expended over the course of the litigation was not unreasonably increased thereby." *Simmonds,* 2008 WL 4303474, at *6.

*Simmonds* was a Title VII case against the City's Department of Corrections. Plaintiffs alleged gender discrimination, sexual harassment and retaliation. They were jointly represented by lawyers from the American Civil Liberties Union and a private firm, Steptoe & Johnson. Plaintiffs received a substantial settlement, thereby qualifying as a prevailing party, and applied for attorneys' fees. The City opposed the requested fees, "the essence of [its] challenge" being directed "to the propriety of compensating Simmonds for the co-counsel arrangement between the ACLU and Steptoe." 2008 WL 4303474, at *2.

Judge Buchwald concluded that "a 40% reduction in the total number of hours expended is necessary to correct for the inefficiencies resulting from the co-counsel arrangement and from the apparent willingness to conduct the litigation in an undisciplined manner." *Id.* at *8. She disavowed any intention of "upsetting the incentive structure that facilitates the existence of this formidable and beneficial

---

**6.** The Court does not question the veracity of anything Class Counsel say in their declarations, and fully accepts that they made a good faith after-the-event effort to calculate the hours spent on the basis of the documents available to them. But "the dictates of *Carey"* are mandatory, as the Second Circuit's choice of words in *Cruz* reflects, and Class Counsel's submissions do not satisfy them.

partnership between private and public interest law firms," but restated "the fundamental principle that the attorney's fees and costs recoverable from defendants is, and always has been, bounded by reasonableness." *Id.* at *2. The 40% reduction was imposed because of these circumstances:

> While the billing records indicate that the ACLU and the Steptoe attorneys often divided the work between them, they also suggest that the delegation of authority was rarely, if ever, complete and that litigation tasks were often assigned without particular regard for any institutional advantages that one firm might have over the other. The ACLU did not, as Simmonds contends, serve merely in an advisory or supervisory capacity to their more litigation-savvy co-counsel. Rather, both firms were heavily involved in all aspects of the litigation, from drafting and revising the pleadings to reviewing discovery materials and preparing for depositions. Attorneys from both firms routinely reviewed and revised each others' work product and jointly attended court conferences and meetings with clients and co-counsel.

> Consequently, the total number of hours billed over the course of the litigation substantially exceeded what was reasonably required to prosecute Simmonds's straightforward claims.

*Id.* at *6–7.

*Simmonds* is an extreme example of attorney duplication of effort. The case at bar differs in important ways. The claims of the plaintiff class are anything but "straightforward"; they have involved and continue to involve questions of public and private concerns which are complex, sensitive and difficult, evidenced in part by the sometime zigzag course the Court itself has steered through them. A charge of duplication of effort must be considered in the context of the particular issues being litigated at the time. At times in this protracted case the participation of all five Class Counsel was appropriate and productive. To illustrate: During the 1980s, Class Counsel engaged in negotiations with the City which resulted in a proposed settlement of the action, which included the original pre–9/11 Handschu Guidelines. This Court held a fairness hearing at which objections to the settlement could be heard. Messrs. Eisenstein, Chevigny, Stolar and Siegel appeared as Class Counsel. They were seated in the courtroom jury box. Counsel's tables and some of the pews were filled with attorneys who came to object to the settlement. They were a who's-who array of prominent lawyers in the field of civil rights. One by one, these lawyers argued on behalf of the organizations or individuals they represented that the settlement was unfair and unreasonable, grossly unsatisfactory to class members, and far too lenient and favorable to the City and the NYPD. As Class Counsel listened to their erstwhile allies, one by one, trashing their achievement, their expressions changed from detached *sang froid* to controlled fury: what trial judges call "demeanor evidence." When the objectors had all been heard, each of the Class Counsel spoke vigorously and at some length in defense of the proposed settlement. It was beneficial to the Court to have views on the propriety of the settlement expressed from the perspectives of private practice, public interest groups, and academia. I approved the settlement. 605 F.Supp. 1384 (S.D.N.Y.1985). The Second Circuit affirmed. 787 F.2d 828 (2d Cir.1986).

That was a litigation event where full participation by all Class Counsel was entirely appropriate. However, the motion practice giving rise to the present fee application had to do with more narrow (although important) issues. The question

the City poses is the question in *Sim-monds:* whether "the total number of hours" billed by the five Class Counsel "was reasonably required to prosecute" the class's claims during the course of this particular motion practice.

This case also differs from *Simmonds* in that the ACLU and private-firm attorneys in *Simmonds* seem to have duplicated their efforts in all aspects of the case, whereas here Eisenstein has acted as lead counsel and the other four have claimed significantly fewer hours.

Nonetheless, I conclude that there is an element of duplication of effort with respect to these particular litigated issues. Consider: For each hour when all five Class Counsel conferred together about correspondence, a letter, a brief, an argument, or related subjects, the City is charged $2,000, rather than the $400 that would have been incurred if Mr. Eisenstein, let us say, had been contemplating the matter alone. The compilation reveals a number of such conferences. While I respect the stature of these five attorneys, leaders in their several fields, and trust that the contributions they have made to this important litigation over the years will continue, when the City is asked to pay their fees the Court must scrutinize the reasonable necessity of this degree of joint effort.

I conclude that a reduction of 10% must be made on this score.

## F. Fees Which are Not Subject to Reduction

### 1. *Period 4*

The January 19 Opinion imposed a sanction upon the office of the Corporation Counsel "which requires that office to pay Class Counsel's fees and expenses from April 13, 2007, the date Interim Order 47 was rescinded, to September 18, 2008, the date Corporation Counsel told Class Counsel of the rescission, to the extent that such fees and expenses would not have been incurred if Corporation Counsel had told Class Counsel of the Order's rescission when it occurred." 679 F.Supp.2d at 504. Class Counsel bore the burden of allocation of fees and expenses in that regard; to the extent they did so, "the resulting award of fees and expenses will not be subject to reduction on a *Hensley* rationale of partial success." *Id.*

The fee application includes asserted sanction-based fees in Period 4, covering work performed between June 13, 2007 and September 18, 2008. The compilation also describes work during that period to implement the Court's prior ruling on the "standing" issue, the core question on which the class prevailed. The Court had allowed Class Counsel discovery into the NYPD's application of Interim Order 47, and counsel began that process by examining videotapes the City was ordered to produced. Class Counsel also opposed the City's motions under Rule 59, Fed.R.Civ. P., challenging the Court's rulings in the class's favor, as well as the City's notice of an interlocutory appeal, which Class Counsel moved to dismiss. On August 28, 2007, the City and Class Counsel endorsed a stipulation withdrawing the City's appeal "without costs and without attorneys' fees, pursuant to Rule 42(b) of the Federal Rules of Appellate Procedure." Ex. G to Declaration of Peter G. Farrell, a senior counsel in the Corporation Counsel's office.

The City's arguments seeking to reduce the fees incurred during this period are not persuasive. First, it contends that the time Class Counsel spent reviewing police videotapes after August 11, 2008 should not be included in the sanction because on that date Corporation Counsel told Class Counsel by letter that Interim Order 47 had been rescinded. The City argues that Class Counsel "spent that time reviewing and discussing the videos even though they

already knew that IO 47 was rescinded in April 2007," which is "prima facie evidence of the fact that Class Counsel wanted to see what was on the videotapes regardless of whether IO 47 was revoked or not and thus that time should not be compensable." Brief at 14–15.

This argument is disingenuous. At the times in question, Class Counsel were conducting Court-sanctioned discovery into the application by the NYPD of the surveillance protocols set forth in Interim Order 47. Class Counsel did not know IO 47 had been rescinded in April 2007 because Corporation Counsel did not tell them. In their August 11, 2008 letter, Corporation Counsel inadvertently let slip that IO 47 was no longer in effect, but did not tell Class Counsel that Interim Order 22 had replaced it or what it said. Class Counsel was kept in the dark: IO 47 could have been rescinded and not replaced; or replaced by a more problematic protocol; or replaced by a protocol which ameliorated Class Counsel's concerns. In point of fact, IO 22 had an ameliorating effect, but Class Counsel did not know that until Corporation Counsel sent them a copy with a letter dated September 18, 2008. Class Counsel was reasonably entitled to view videotapes during this interval. Accordingly their time spent doing so falls within the sanction. Class Counsel stopped looking at videotapes after a meeting on September 24, 2008 "to prepare response to [the] change revelation." Compilation at 15. The record makes it plain that Class Counsel would not have spent any time viewing these NYPD videotapes if Corporation Counsel had given them a copy of Interim Order 22 when it was promulgated on April 13, 2007, as of course they should have done. All that time is compensable under the sanction because the fees "would not have been incurred if Corporation Counsel had told Class Counsel of [IO 47's] rescission when it occurred." 679 F.Supp.2d at 504.

The City waxes particularly indignant over videotape viewing after September 18, 2008. Siegel watched tapes and took notes for 2.75 hours on September 21. Eisenberg watched tapes for .75 hours on September 22. Stolar and Eisenberg each spent 1 hour viewing tapes on September 23. These expenditures of time are *de minimis,* and are in any event justifiable as preparation for the September 24 conference between Class Counsel about the City's "revelation," after which no further videotape viewing occurred.

The City contends that Class Counsel's time in opposing the City's interlocutory appeal should not be compensated, because the parties' stipulation recited that the appeal was withdrawn "without costs and without attorneys' fees." However, that provision in the stipulation does not control in the light of circumstances subsequently revealed. The stipulation was signed on August 28, 2007. Interim Order 47 was involved in the issues covered by the appeal. IO 47 had been rescinded in April 2007, four months before Class Counsel were asked to stipulate to the withdrawal of the appeal, but Corporation Counsel had not told them that. Class Counsel argue that if it had been revealed to them "that IO 47 was no longer in existence, and that we had been litigating against a nullity, we would hardly have stipulated to dismissal of defendants' patently frivolous interlocutory appeal without seeking fees for our work." Reply Brief at 13. Counsel's self-analysis is self serving, but plausible nonetheless, and I conclude that their work on the City's appeal, performed without knowledge of the rescission of IO 47, is compensable, notwithstanding the waiver of attorneys' fees in the stipulation that the City obtained while concealing from Class Counsel a material change of circumstances in the case.

## 2. *Period 5*

The City accepts in principle that Class Counsel's work in preparing this fee application is compensable, but contends that the amounts sought are unreasonable, principally because much of that time "must have been spent on ministerial tasks that should not get billed at $400 an hour" and which "an administrative assistant or paralegal could perform." Brief at 20–21.

The Court-imposed task of paring down and separating hours to account for partial success and partial failure in this complex case posed difficulties beyond the capabilities of an administrative assistant or paralegal. To the extent that Class Counsel's job was complicated by inadequate time records, their fees are subject to the 10% across-the-board reduction of fees on that score. There is also a 10% across-the-board reduction on account of multiple attorneys and duplication of effort. No additional reduction is required with respect to time spent preparing the fee application.

## V. THE FEE AWARDS

The Court awards fees to the five Class Counsel in the amounts set forth in the following Table. The numbers of hours claimed by the attorneys in their individual declarations are accepted as starting points, but all fees are subjected to 20% reductions, comprised of a 10% reduction for inadequate time records and a 10% reduction for duplication of effort. In addition, a 30% reduction is imposed for partial failure in those areas of the litigation where such a reduction is appropriate.

*Eisenstein*

Period 1: 57.75 hours + Period 3: 68.75 hours = 126.5 hours

126.5 hours × .7 = 88.55 hours × $400 =     $ 35,420

Periods 4 and 5: 189 hours × $400 =     $ 75,600

    $111,020

$111,020 × .8 = **Fee Awarded:**     $ 88,816

*Chevigny*

Period 1: 25.5 hours + Period 3: 19 hours = 44.5 hours

44.5 hours × .7 = 31.15 hours × $400 =     $ 12,460

Periods 4 and 5: 68.5 hours × $400 =     $ 27,400

    $ 39,860

$39,860 × .8 = **Fee Awarded:**     $ 31,888

*Stolar*

Period 1: 14.95 hours + Period 3: 11.63 hours = 26.58 hours

26.58 hours × .7 = 18.606 hours × $400 =     $ 7,442

Periods 4 and 5: 45.6 hours × $400 =     $ 18,240

    $ 25,682

$25,682 × .8 = **Fee Awarded:**     $ 20,546

*Siegel*

Period 1: 25.5 hours + Period 3: 22.08 hours = 47.58 hours

47.58 hours × .7 = 33.306 hours × $400 =     $ 13,322

Periods 4 and 5: 43 hours × $400 =     $ 17,200

    $ 30,522

$30,522 × .8 = **Fee Awarded:**     $ 24,418

*Eisenberg*

Period 1: 39.25 hours + Period 3: 14.75 hours = 54 hours

54 hours × .7 = 37.8 hours × $400 =     $ 15,120

Periods 4 and 5: 39.75 hours × $400 =     $ 15,900

    $ 31,020

$31,020 \times .8 =$ Fee Awarded:                    $ 24,816

The City is directed to pay these attorneys the amounts designated as "Fee Awarded" and appearing in boldface in this table.

In addition, the City is directed to pay Eisenstein expenses incurred in a total amount of $428.51, as described in his declaration. This modest amount is reasonable and need not be subjected to reduction analysis.

The City is further directed to make these payments not later than August 31, 2010, failing which interest will begin to accrue.

It is SO ORDERED.